# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LAURANNE WHEELER,
CENTRAL NEW MEXICO ELECTRIC
COOPERATIVE, INC., and CENTRAL
NEW MEXICO ELECTRIC COOPERATIVE
BENEFIT PLAN,

      Plaintiffs,

v.                                                             NO. 11-CV-475 WJ/LFG

NORTHWESTERN MUTUAL LIFE INSURANCE
COMPANY d/b/a NORTHWESTERN MUTUAL
FINANCIAL NETWORK, THE MILLER FINANCIAL
GROUP, J. MICHAEL BERG, HCC LIFE INSURANCE
COMPANY, and CNIC HEALTH SOLUTIONS, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING STATE LAW CLAIMS TO STATE COURT

THIS MATTER comes before the Court on Defendant CNIC's Motion for Summary Judgment on Plaintiff's Complaint and for Attorney's Fees (**doc. 40.**) filed 25 August, 2011. After considering the submissions of the parties and applicable law, the Court finds that Defendant's motion is well taken, and shall be GRANTED in part, and the remaining claims shall be REMANDED to the New Mexico State Court for further proceedings.

## BACKGROUND

**I.**    **Facts**

This case involves an allegedly wrongful denial of coverage for a surgical procedure under an employee health plan. In the summer of 2008, Plaintiff Lauranne Wheeler ("Wheeler")

was provided health insurance coverage benefits as the spouse of John Wheeler, a high-level employee of Plaintiff Central New Mexico Electric Cooperative, Inc. ("CNMEC"). CNMEC had set up an employee benefit plan (the "Plan"), to provide coverage for medical expenses. Northwestern and Miller Financial Group ("Miller") were the insurance brokers/agents responsible for procuring the health insurance policy for CNMEC, and apparently also provided advice to CNMEC and its employees regarding coverage and service under the terms of the Plan. Defendant Berg was employed by Northwestern, Miller or SEBS and was the insurance agent having regular contact with CNMEC. The Plan was a self-insured plan whereby CNMEC accumulated funds and paid employee healthcare costs. The terms of the Plan required that certain sorts of medical expenses be pre-certified. The Plan itself was administered under contract by Defendant CNIC Health Solutions ("CNIC"). CNIC managed the day to day operation of the Plan, but CNMEC maintained ultimate authority as to making decisions under the Plan or interpreting the terms of the Plan. CNIC administered the Plan, but was not financially responsible for payments under the Plan; payments came from the Plan's own funds. Defendant HCC Life Insurance Company ("HCC") provided stop-loss insurance, whereby HCC reimbursed the Plan for covered payments that rose above a certain amount, which was generally $30,000. While CNMEC had ultimate control of the Plan, HCC had some role in determining benefits under the plan and approving pre-certifications because HCC made its own determinations as to reimbursement. In other words, while CNMEC had ultimate authority to interpret the Plan and make its own determinations as to expenses and pre-certifications, HCC would not reimburse CNMEC if expenses did not qualify under HCC's determinations.

    In the summer of 2008, Wheeler was experiencing health issues with blood circulation in her lower extremities. Her physician recommended a drastic surgical procedure in order to save

her right leg, namely, an interposition bovine vascular graft. Upon receiving the physician's request for authorization, Defendant CNIC referred the matter to a doctor who was regularly employed by CNIC and HCC, and who recommended denial of authorization for the procedure, which he saw as experimental. However, Defendant Berg contacted Plaintiff and the surgeon's office and advised them that the surgery had been approved. Plaintiffs allege that Wheeler, CNMEC, and the surgeon relied on Berg's representations of coverage and proceeded with the surgery with the expectation that the surgery and all related expenses would be paid by the Plan, and that the Plan would be reimbursed by HCC for any expenses exceeding $30,000.

Wheeler experienced complications following the surgery which resulted in further surgical procedures and medical expenses. Those expenses were submitted to CNIC, which, after seeking guidance from CNMEC about whether to pay the expenses and receiving no response, denied payment. Plaintiffs allege that CNIC did not properly handle its duties of administering the Plan, with the result that CNMEC was misled as to the proper procedure for determining whether Wheeler's expenses were covered by the Plan and would be reimbursed by HCC; in other words that CNIC "opened a can of worms by its conduct that need never have been opened and created false assumptions and misconceptions." (Doc. 47 at 15.)

For purposes of this motion, the following material facts are undisputed by the parties. The Plan was established by an employer, CNMEC, in order to provide its employees with medical insurance benefits. CNMEC is the "Plan Administrator" and the "Plan Sponsor." CNIC is not a "plan administrator." (*See* doc. 41 at 3; doc. 47 at 4; doc. 49 at 2.) CNIC did not have authority to interpret the plan; instead it had authority under the contract only to make recommendations to CNMEC. Doc. 47 at 2, 3, 10–12, 16; doc. 49 at 7, 12–14. The Administration Service Agreement provides that "CNIC is not a plan fiduciary." (Doc. 41 at 3.)

The Agreement also provides that "the Administration Services to be performed by CNIC pursuant to this Agreement shall be ministerial only," and that CNIC is to "implement written instructions from Plan Sponsor regarding the Plan provided that the instructions are consistent and compatible with the Plan," and that CNIC would process all claims for health benefits in accordance with the terms of the Plan and directions of the Plan Sponsor. *Id.*

## II.    Procedural History

On November 13, 2009, Plaintiff Wheeler filed the initial complaint in the Second Judicial District Court, County of Bernalillo, alleging various causes of action against HCC, CNIC, and Berg et al. Defendant CNIC removed the case to federal court on June 3, 2011, based on federal preemption under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").

On June 16, 2011, Plaintiff Wheeler filed a First Amended Complaint as of right, (doc. 12; *see* doc. 19). The First Amended Complaint added Plaintiffs CNMEC and the Plan. In the interim between the filing of the original Complaint and the filing of the First Amended Complaint, CNMEC paid Wheeler's medical expenses on its own initiative. The First Amended Complaint asserts the following claims: Declaratory Judgment in Count I as to HCC; Breach of Contract in Count II as to HCC; Breach of Fiduciary Duty in Count III against all Defendants; Negligent Misrepresentation in Count IV against Defendants Berg, Miller, Northwestern and Strategic Employee Benefit Service of New Mexico ("SEBS"); Fraud in Count V against Defendants Berg, Miller, Northwestern and SEBS; Negligence in Count VI against Defendants Berg, Miller, Northwestern and SEBS; Promissory Estoppel in Count VII against Defendants Berg, Miller, Northwestern and SEBS; and Violation of the New Mexico Unfair Claims

Practices Act ("UPCA") in Count VIII against Defendants HCC, CNIC, Berg, Miller, Northwestern and SEBS.

On November 21, 2011, the Court entered an Order (doc. 52) dismissing HCC from the case in accordance with a stipulation by Plaintiffs.

The instant motion is filed by CNIC, seeking summary judgment as to all claims against it. Those claims are: Count III breach of fiduciary duty owed to Plaintiffs, and Count VIII violation of the New Mexico Unfair Claims Practice Act.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir.1998). To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Bausman v. Interstate Brands Corp*., 252 F.3d 1111 (10th Cir. 2001).

### II. Application

*A. ERISA "plan"*

The Plan was established by an employer, CNMEC, in order to provide its employees with medical insurance benefits. The Tenth Circuit has interpreted ERISA's definition of a plan by adopting "five criteria that must be established for an 'employee welfare benefits plan' to fall within ERISA's scope: '(1) a "plan, fund, or program" (2) established or maintained (3) by an

5

employer (4) for the purpose of providing health care or disability benefits (5) to participants or their beneficiaries." *Sipma v. Massachusetts Cas. Ins. Co.*, 256 F.3d 1006, 1009 (10th Cir. 2001) (quoting *Gaylor v. John Hancock Mut. Life Ins. Co.*, 112 F.3d 460, 464 (10th Cir.1997)).  The parties do not dispute that the Plan satisfies these five criteria, and the Court agrees that the Plan is an employee welfare benefits plan under ERISA.

    *B.  Breach of Fiduciary Duty*

Plaintiffs seek, in Count III, to recover damages for an alleged breach by CNIC of its fiduciary duties under the Plan.  In order to recover, Plaintiffs must first establish that CNIC was a fiduciary under ERISA.  *See Kyle Railways, Inc. v. Pacific Admin. Services, Inc.*, 990 F.2d 513, 516 (9th Cir. 1993) ("ERISA permits suits for breach of fiduciary duty only against ERISA defined fiduciaries.") (citing *Gibson v. Prudential Ins. Co. of America*, 915 F.2d 414, 417 (9th Cir.1990) and *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324–25 (9th Cir.1985) (per curiam)).

ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (internal citation omitted).  ERISA states that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).  "The legislative history of ERISA reveals that the definition of fiduciary was meant to include 'persons who have authority and responsibility with respect to the matter in question, regardless of their formal title.'"  *Mortgage Lenders Network USA, Inc. v. CoreSource, Inc.*, 335 F.Supp.2d 313, 318–19

(D.Conn. 2004) (quoting H.R. Conf. Rep. No. 1280, 93rd Cong., 2d Sess., reprinted in 1974 U.S.C.C.A.N. 5038, 5103).

Plaintiffs have not brought forward evidence that CNIC is a fiduciary under the Plan. To the contrary, the evidence and the arguments made by the parties establish that CNIC is not an ERISA fiduciary. According to the undisputed facts, the agreement whereby CNIC undertook to administer the Plan states that CNIC is not a fiduciary, that its duties are purely ministerial, and that instead CNMEC is the plan fiduciary. (Doc. 41 at 3.) Additionally, Plaintiffs argue forcefully that CNIC did not have discretionary authority under the plan to make determinations, but that its duties were restricted to making a recommendation regarding benefits determinations. (*See* doc. 47 at 2, 3, 10–12, 16.) CNIC agrees. (Doc. 49 at 14.) Therefore, the Court concludes that CNIC was not a plan fiduciary under ERISA, and thus that it had no fiduciary duties under the Plan to Plaintiffs. Because CNIC is not an ERISA fiduciary, Plaintiffs may not assert claims for breach of fiduciary duties against CNIC, and accordingly the Court grants summary judgment to CNIC with respect to Plaintiffs' Count III, Breach of Fiduciary Duties.

*C. New Mexico Unfair Claims Practice Act*

The parties allot few words to the validity of Plaintiffs' claims under the UCPA, N.M.S.A. § 59A-16-20 (1978). Plaintiffs write only that "[i]f this court determines ERISA does apply to CNIC, the Plaintiffs agree there can be no claim [under the UCPA] . . . because such claims would be preempted by ERISA. However, if the court holds to the contrary, then Plaintiffs should be allowed to pursue such a claim under state law." (Doc. 47 at 15.) After evaluating those claims under the law regarding ERISA preemption, the Court concludes that

though CNIC is not an ERISA fiduciary,[1] ERISA applies to the Plan, and Plaintiffs' UCPA claims are preempted.

Congress enacted ERISA to ensure national uniformity in fiduciary standards for the administration of employee benefit plans. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 104 (1983). To that end, it included a broad provision that "pre-empts all state laws insofar as they may now or hereafter relate to any employee benefit plan." *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 333 (2003) (internal quotation marks omitted).

The Tenth Circuit "has recognized four categories of laws which have been held preempted because they 'relate to' ERISA plans." *Airparts Company, Inc. v. Custom Benefit Services of Austin, Inc.*, 28 F.3d 1062, 1064 (10th Cir. 1994). The fourth category is "laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan." *Id.* at 1064–65.

In this case, Plaintiffs bring Count VIII for violations of the UCPA and allege that CNIC violated the act by "misrepresenting pertinent facts and not attempting to effectuate a prompt, fair and adequate resolution of a claim in which liability has become reasonably clear." The UCPA provides that:

---

[1] Even though CNIC is not an ERISA fiduciary, that fact does not affect the ERISA preemption analysis. *See Verizon Employee Benefits Committee v. Kosinski*, 2009 WL 2390229, 2 (E.D.Pa. 2009) ("[E]very Court of Appeals which has considered this issue held that a defendant's lack of status as an ERISA fiduciary was not a factor in an ERISA preemption analysis so long as the claim related to an ERISA plan.") (citing cases); *see also Clark v. Humana Kansas City, Inc.*, 975 F.Supp. 1283, 1289 (D.Kan. 1997) ("[T]he court concludes that the Tenth Circuit would take *Cannon* [*v. Group Health Service of Okla., Inc.*, 77 F.3d 1270 (10th Cir.1996)] to the next logical step and join its sibling circuits in deeming a defendant's non-fiduciary status immaterial to the preemption analysis.").

> Any and all of the following practices with respect to claims, by an insurer or other person, knowingly committed or performed with such frequency as to indicate a general business practice, are defined as unfair and deceptive practices and are prohibited:
>
> A. misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue; . . .
>
> E. not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear.

§ 59A-16-20. If CNIC violated these prohibitions, it could only have done so through its administration of the Plan, and specifically its denial of Wheeler's claims. In other words, Plaintiffs' UCPA claim would provide a remedy for CNIC's misconduct growing out of CNIC's administration of the Plan. This is precisely the sort of law contemplated by the Tenth Circuit's fourth category of laws preempted by ERISA. *See Airparts*, 28 F.3d at 1064–65. Therefore, any UCPA claims, brought either by Plaintiff Wheeler or Plaintiffs CNMEC or the Plan, are preempted because they "relate to" the Plan.[2]

## CONCLUSION

CNIC is not an ERISA fiduciary, and therefore Plaintiffs may not assert a claim for breach of fiduciary duties against CNIC. Additionally, Plaintiffs' state law claims are preempted by ERISA's preemption provision because they relate to an ERISA plan. Therefore the Court

---

[2] Though the parties do not argue this point, the Court notes that the UCPA is not a "law regulating insurance" under ERISA's savings clause. *See Kelley v. Sears, Roebuck and Co.*, 882 F.2d 453, 455–56 (10th Cir. 1989) (holding that Colorado's statutory prohibition of unfair and deceptive insurance practices did not regulate insurance for purposes of ERISA's savings clause, and thus was subject to preemption).

GRANTS Defendant CNIC's motion for summary judgment. The Court does not address CNIC's claims for costs and fees under its contract with CNMEC.[3]

Defendant CNIC removed this case based on federal question jurisdiction because of the effects of ERISA on the claims against CNIC. (Doc. 1.) Those claims are herein dismissed, and the First Amended Complaint contains no other questions of federal law.

The Court has supplemental jurisdiction of claims which are closely related to a party's federal claims. 28 U.S.C. § 1367(a). However, the Court may "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). *See also Thatcher Enterprises v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990) ("If the federal claim is dismissed before trial, even though not insubstantial in the jurisdictional sense, the state law claim will generally be dismissed as well. Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."). While this Court acknowledges that it has discretion to retain the state law claims, "that discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Id.* In this case, having weighed those factors, the Court concludes that there is no compelling reason why this Court should decide Plaintiffs' remaining state law claims. The case has been in federal court for only six months. Prior to removal, this case had developed for over a year and a half in state court. Therefore the

---

[3]As a general matter, ERISA plans may sue and be sued, and therefore state law claims are not preempted unless they "relate to" the plan. *See, e.g.*, *W.E. Aubuchon Co., Inc. v. BeneFirst, LLC,* 661 F.Supp.2d 37, 46–47 (D.Mass.,2009) ("Claims on behalf of plans, however, against third-party administrators for breach of contract or professional malpractice generally have not been found to be preempted.") (citing cases). Therefore, claims between CNMEC and CNIC based on the contract between them are likely valid and not preempted.

Court concludes that proper deference to comity and federalism demand that the remaining state law claims be returned to the state court for resolution.

Therefore, the Court REMANDS the remaining claims in this case to the New Mexico State District Court. Defendant CNIC may, if it so chooses, renew its request for attorney fees under its contract with CNMEC before the state court.

**SO ORDERED**.

_____
UNITED STATES DISTRICT JUDGE